939 So.2d 159 (2006)
HOWARD MOSS, Appellant,
v.
PATRICIA L. MOSS Appellee.
Case Nos. 2D03-478, 2D03-2355 consolidated.
District Court of Appeal of Florida, Second District.
Opinion filed September 29, 2006.
Cynthia L. Greene of Law Offices of Greene, Smith & Associates, P.A., Miami; and David M. Wall of Law Offices of David M. Wall, Clearwater, for Appellant.
Joseph R. Park and Michael J. Park, Park and Ossian, P.A., Clearwater, for Appellee.
STRINGER, Judge.
On remand from the Florida Supreme Court, Howard Moss (the Husband) challenges the trial court's determination that he was not entitled to an award of attorney's fees against his former wife, Patricia Moss (the Wife). The supreme court did not make a decision in this case, but instead remanded for this court to reconsider its previous opinion in light of the supreme court's decision in Lashkajani v. Lashkajani, 911 So. 2d 1154 (Fla. 2005), concerning the validity and enforceability of prevailing party attorney's fee provisions in prenuptial agreements. We again affirm.

FACTS

Underlying Facts
The parties were married on February 14, 1993, in Reno, Nevada. At the time of the marriage, the parties were living in Illinois, where the Husband's family owned several successful currency exchange businesses. The Wife had worked for one of these businesses before the marriage. Because of the Husband's significant preexisting wealth and ownership interest in the family businesses, the parties signed a prenuptial agreement ("the Agreement") before the marriage. Paragraph 18 of the Agreement provided, in pertinent part:
If either party breaches any provision of this Agreement, the breaching party or his or her estate shall indemnify the other party and make the other party whole as if no such breach had taken place with respect to this Agreement. . . . Further, the breaching party or his or her estate shall be liable for any attorney's fees, costs and expenses incurred by the other party in attempting to enforce the provisions of this Agreement.
Shortly after the marriage, the parties moved to Florida where they together began to investigate starting a new currency exchange business. Ultimately, the parties opened five currency exchange businesses in the Tampa/St. Petersburg area. There was undisputed testimony at the dissolution hearing that the Wife worked with the Husband to find business locations, coordinate the construction of the buildings, hire and train employees, and manage the day-to-day operations of the businesses. Even though the Wife spent as many, if not more, hours actually working for the businesses than the Husband did, the Wife was not paid a salary nor was she considered an employee. Moreover, the businesses were incorporated and held solely by the Husband and his brother. Thus, the Wife worked more than full time for these postmarital businesses, but she was not compensated for her efforts either by salary or through ownership. Instead, the Husband told the Wife that once she determined what she wanted to do, he would "repay" her by setting her up in a business that she could leave to her children.
In February 2001, the Wife filed a petition for dissolution. In that petition, the Wife admitted that the Agreement was valid and enforceable. She sought the lump sum payment due to her under the Agreement, and she sought the two years of alimony payments provided for by the Agreement. In addition, the Wife sought an award of temporary alimony while the dissolution proceedings were pending and an award of rehabilitative alimony so that she could complete her training as a massage therapist. She also sought to be awarded a "special equity" in the Florida businesses based on the services she had provided to those businesses and the Husband's postmarriage promises to set her up in another business. In seeking the awards of rehabilitative alimony and "special equity," the Wife contended that these claims were not barred by the Agreement because they were simply not addressed anywhere in it. Thus, the Wife's claims dealt with the interpretation and scope of what she admitted was a valid and enforceable prenuptial agreement. The Wife also sought an award of attorney's fees and costs pursuant to section 61.16, Florida Statutes (2001).
In response to the Wife's petition, the Husband argued that the claims for rehabilitative alimony and a "special equity" were within the scope of the Agreement and were barred by it. He also argued that any award of temporary alimony should be offset against the lump sum amounts due to the Wife under the Agreement. He further contested the Wife's interpretation of the Agreement as it applied to the lump sum payment, claiming that the length of the marriage, and thus the corresponding payment, should be determined based on when the petition was filed rather than when dissolution was actually granted. Finally, the Husband sought an award of his attorney's fees pursuant to section 57.105, Florida Statutes (2001), contending that the Wife's claims were frivolous in light of the plain language of the Agreement.
During the course of the proceedings, the Wife's claim for rehabilitative alimony became moot. In the final judgment of dissolution, which was rendered December 20, 2002, the trial court found that the Wife's claim for "special equity" in the Florida businesses was barred by the Agreement. However, the trial court agreed with the Wife that the temporary alimony paid during the pendency of the dissolution case was not an offset to either the lump sum payment or the two years of alimony payments provided for by the Agreement. In addition, the trial court agreed with the Wife's interpretation as to the determination of the proper lump sum owed under the Agreement.
After the hearing on the petition for dissolution but before the final judgment of dissolution was actually entered, both parties set a hearing on their claims for attorney's fees and costs for December 6, 2002. When that hearing was scheduled, the only pending motion for attorney's fees filed by the Husband was his motion seeking fees pursuant to section 57.105. There was no pending motion seeking an award of attorney's fees pursuant to paragraph 18 of the Agreement, and no such claim had been made in the Husband's answer to the Wife's petition.
Shortly before the December 6, 2002, hearing, the Husband cancelled the portion of the hearing dealing with his motion. Thus, the December 6 hearing dealt solely with the Wife's motion for attorney's fees and costs. At the start of the December 6 hearing, the Husband told the court that he had cancelled the hearing on his motion because the final judgment had not yet been entered. The sum total of the Husband's discussion concerning his motion for fees was as follows:
The Respondent's Motion for Attorney's Fees, Your Honor, is really based upon two different issues that will really be resolved when a final judgment is entered that addresses the issues that were tried before the Court.
Until that final judgment is entered, the issues that we want to address regarding provisions in the prenuptial agreement relating to the breach of contract provision, which is I believe paragraph eighteen that we are asserting, there was a breach of the contract here in that the Petitioner sought an award of benefits or entitlements that were waived in the prenuptial agreement. And again, until the final judgment addresses and resolves those, we are not in a position to move forward with our Motion for Attorney's Fees.
The other motion or the other issue that was pending is a 57.105 motion. That addresses the same sort of issues, and as I'm sure the Court is well aware of, that section or that statutory provision really begins with a requirement that there be a prevailing party and we haven't reached that point yet.
That's why we cancelled our notice of hearing.
At the conclusion of the December 6 hearing, the parties agreed that they would schedule a continuation of the hearing on the motions for fees after the final judgment was entered.
After the December 6 hearing and the December 20 entry of the final judgment of dissolution, the parties scheduled the continuation of the hearing on their motions for attorney's fees for April 11, 2003. However, despite the Husband's stated intent at the December 6 hearing, the Husband never made any argument at the April 11 hearing that he was entitled to fees under paragraph 18 of the Agreement. Rather, the Husband's entire argument focused on section 57.105 issues.
After considering the arguments made by both parties, the trial court granted the Wife's motion for attorney's fees and costs and denied the Husband's motion. The trial court's ruling on the Husband's motion was limited to the statement that "[a]ny request for attorney's fees by the Former Husband is denied." The Husband subsequently appealed from both the final judgment of dissolution and the order on attorney's fees.

Initial Appeal
In his initial appeal to this court, the Husband challenged the trial court's finding concerning the length of the marriage for purposes of determining the proper lump sum to be awarded the Wife under the Agreement. The Husband also raised three issues concerning the attorney's fees awarded to the Wife. We affirmed the trial court on these issues. Moss v. Moss, 901 So. 2d 177 (Fla. 2d DCA 2005).
The Husband also argued that the trial court had erred in denying his request for attorney's fees. He argued that the Wife's claims were meritless and therefore that he was entitled to an award of fees pursuant to section 57.105. He also argued that the trial court had "disregarded" his argument that he was entitled to an award of fees under paragraph 18 of the Agreement. However, in his brief, the Husband recognized that this court had previously held that similar attorney's fee provisions in prenuptial agreements were unenforceable, and he asked this court to certify to the supreme court the same question that was certified in Lashkajani v. Lashkajani, 855 So. 2d 87 (Fla. 2d DCA 2003), concerning the enforceability of these types of provisions.
In our opinion, we affirmed the trial court's denial of the Husband's motion for attorney's fees under section 57.105. Moss, 901 So. 2d at 177. Per the Husband's request, we also certified the same question that we did in Lashkajani concerning the enforceability of prevailing party attorney's fee provisions in prenuptial agreements. In doing so, we neither considered nor decided the issue of whether the Husband's claim under paragraph 18 of the Agreement had any merit.

Supreme Court
The Husband appealed the certified question to the supreme court. Because the supreme court had recently quashed this court's decision in Lashkajani and because this case posed the same certified question, the supreme court accepted summary review, quashed our decision in Moss, and "remanded this case for reconsideration in light of this Court's decision in Lashkajani." Moss v. Moss, 914 So. 2d 942, 942 (Fla. 2005).

Current Appeal
On remand, the Husband makes the same arguments concerning whether the trial court properly awarded the Wife her attorney's fees pursuant to section 61.16. He also makes the same arguments concerning the merit of the Wife's positions in the trial court in an effort to assert that he is entitled to attorney's fees and costs under section 57.105.
On the issue of the Wife's alleged breach of the Agreement, the Husband again argues that the trial court "disregarded" his arguments concerning his entitlement to attorney's fees under paragraph 18 of the Agreement. The Husband asserts that he is entitled to "return to the trial court for a full consideration of this issue, specifically, whether the Wife's spurious 'special equity' claim below constituted a breach of the provisions of the parties' Prenuptial Agreement."

ANALYSIS
A. Husband's Claims Regarding Award of Wife's Attorney's Fees
In his brief on remand, the Husband raises the identical claims concerning the trial court's award of attorney's fees to the Wife that he raised in his initial appeal. In our earlier opinion, we specifically rejected these arguments and affirmed the award of attorney's fees to the Wife. Moss, 901 So. 2d at 177. The award of attorney's fees to the Wife was not the subject of the certified question to the supreme court and is not controlled in any fashion by the supreme court's decision in Lashkajani. Accordingly, our prior opinion stands as to the award of attorney's fees to the Wife.
B. Husband's Claim for Attorney's Fees under section 57.105
The Husband also raises the identical claims concerning his alleged entitlement to attorney's fees under section 57.105 that he raised in his initial brief. We again affirm on this issue as well.
The Husband essentially claims that the language of the Agreement is clear that the Wife was not entitled to any type of "special equity" in the Florida businesses. He contends that because the Agreement barred the Wife from having or obtaining "any right, title, claim in or to any assets [the Husband] may now own or subsequently acquire" and because she waived her right to any "marital or community property . . . in or to all property which [the Husband] may own or possess . . . at any time during the marriage," it was "crystal clear" that she had no right to any interest in the Florida businesses.
While admitting that the language itself seems clear, the Wife contends that it was not clear how that language applied to a business that the parties jointly started and operated postmarriage. She notes that paragraph 3 of the Agreement states that the Husband likewise waives his rights to "marital or community property . . . which [the Wife] owns or may own or possess, or in which she may have a beneficial interest . . . at any time during the marriage." Because she arguably had a beneficial interest in the Florida businesses that arose during the marriage by virtue of her efforts, she contends that the Agreement is not "crystal clear" on this point and that her resort to judicial interpretation was neither meritless nor frivolous.
While the trial court ultimately denied the Wife's "special equity" claim, it did so only after a lengthy discussion of the applicable law and how it related to the terms of the parties' Agreement. It distinguished several cases based on differences in the language between the prenuptial agreements presented in those cases and the parties' Agreement here. Given the cases cited and the trial court's discussion of the facts and law, we agree with the trial court that the Wife's claims were not so meritless or frivolous as to warrant an award of attorney's fees under section 57.105. Accordingly, we again affirm the trial court's denial of the Husband's motion for fees pursuant to section 57.105.
C. Husband's Claim for Attorney's Fees under the Agreement
Finally, the Husband claims that this court should reverse the trial court to the extent that it denied his claim for attorney's fees under paragraph 18 of the Agreement. Because the Husband never sought fees under paragraph 18 of the Agreement in the trial court, we affirm on this issue as well.
As a threshold matter, we note that we did not reach the merits of this issue in the initial appeal because our decision in Lashkajani held that prevailing party attorney's fee provisions in prenuptial agreements were not enforceable as a matter of law. Thus, we affirmed because, regardless of any possible merit to the Husband's argument, any claim was unenforceable. However, the supreme court subsequently decided that such prevailing party attorney's fee provisions may be enforceable. Lashkajani, 911 So. 2d at 1156. Accordingly, now that this threshold issue has been resolved, we must address the arguments raised by the Husband.
While the Husband repeatedly argues in this appeal that the trial court "disregarded" his arguments concerning his entitlement to fees under paragraph 18 of the Agreement, our review of the record shows that this issue is not preserved for our review. The supreme court has repeatedly held that "[i]n order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved." Sunset Harbour Condo. Ass'n v. Robbins, 914 So. 2d 925, 928 (Fla. 2005) (quoting Tillman v. State, 471 So. 2d 32, 35 (Fla. 1985)); see also Dade County Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 644 (Fla. 1999) (noting that generally a claim not raised in the trial court will not be considered on appeal); Mariani v. Schleman, 94 So. 2d 829, 831 (Fla. 1957) (holding that "matters not presented to the trial court by the pleadings and evidence will not be considered by this court on appeal"). This court has followed these rulings, stating:
It is the duty of a party to bring to the attention of the trial court his contentions relating to his claim for relief, and when he fails to do so, he certainly cannot assert that the trial judge was in error for failure to anticipate his desires.
Alliance for Conservation of Natural Res. in Pinellas County v. Furen, 122 So. 2d 51, 65 (Fla. 2d DCA 1960).
This principle has been applied when a party contends on review that the trial court denied relief that was otherwise available. For example, in Margolis v. Klein, 184 So. 2d 205 (Fla. 3d DCA 1966), the defendant sought review of an order dismissing her counterclaim and cross-claim and argued that the trial court should have granted her leave to amend. However, the appellate court noted that it could not "find any application to the trial court in the record to allow such an amendment." Id. at 206. The court noted that it is "elementary that before a trial judge will be held in error, he must be presented with an opportunity to rule on the matter before him." Id. Thus, because the defendant had never requested leave to amend, the appellate court refused to find that the trial court had erred by failing to grant her such leave.
As in Margolis, a careful review of the record in this case shows that the Husband never made any argument concerning his entitlement to fees under paragraph 18 of the Agreement in the trial court. The Husband never filed any pleading or motion seeking attorney's fees pursuant to any provision of the Agreement. The Husband never argued to the trial court that he was entitled to attorney's fees pursuant to any provision of the Agreement. While it is true that at the December 6 hearing the Husband told the trial court that he intended, at some later time, to pursue a claim for attorney's fees pursuant to paragraph 18 of the Agreement, he never actually did so. The Husband did not file a motion for fees pursuant to paragraph 18 after the December 6 hearing. Moreover, at the April 11 hearing, the Husband did not raise or argue the issue of his alleged entitlement to attorney's fees pursuant to any provision of the Agreement. In the absence of a motion or other pleading, the trial court should not be expected to remember that the Husband once stated an intent to seek fees pursuant to the Agreement. Further, even if the trial court remembered the Husband's reference to this intended claim, when the Husband failed to make any arguments concerning entitlement to fees under the Agreement at the hearing specifically held for that reason, the trial court was entitled to assume that the Husband had abandoned that position and had decided to seek fees pursuant solely to section 57.105.
Because the Husband never argued to the trial court that he was entitled to an award of attorney's fees pursuant to any provision of the Agreement, this issue was not preserved for appellate review and is not properly before this court on appeal. The trial court could not err by denying a claim that was never actually presented to it.
Affirmed.
WHATLEY and CASANUEVA, JJ., Concur.
NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.